Dear Mr. Hebert:
You have requested an opinion of this office relative to the Lafayette Charter Commission. Specifically, you ask whether it is possible to propose two separate Charters (City and Parish) with a provision for consolidated governmental services. This so-called `tweaked' Charter, would contain recommendations for specific revisions or amendments to the current Home Rule Charter and Plan of Government for the Lafayette City-Parish Consolidated Government ("LCG").
This request was preceded by three (3) other requests for opinions containing additional issues to the principal issues contained in this request. Through subsequent meetings with Pat Ottinger, your predecessor, to clarify these requests and to obtain further information, and on his initiative and insistence the questions to be answered were substantially reduced and ultimately withdrawn. In your own words, the LCG's proposal "has evolved" to a different plan than originally proposed in the prior requests made and withdrawn on behalf of the LCG. Therefore, LCG has unilaterally modified its proposal several times resulting in the withdrawal of all prior opinion requests from LCG on this matter. Your latest request, dated February 28, 2011, and received by our office on March 2, 2011, confirms the withdrawal of those prior requests and submits the following new questions for consideration: *Page 2 
1) Should the election relative to a proposal to amend LCG's current Home Rule Charter and plan of government, and/or to adopt replacement Charters and plans of government for the City of Lafayette and for the Parish of Lafayette, be held of all qualified electors of the entire Parish of Lafayette and/or should the qualified electors residing in the City of Lafayette have a separate vote on this matter.
2) Section 8-01 of LCG's existing Charter sets forth, with particularity, the voting precincts which comprise each of the nine (9) Council Districts. Is it mandatory that any new Charter (for either the City or Parish) must contain a particularized listing of the voting precincts of which each new Council (City and Parish) will be comprised?
3) Is it permissible to present to the electorate, by way of distinct propositions, alternative propositions for different, perhaps mutually exclusive forms of government, such as a proposal for two (2) separate and distinct governing authorities, or Councils, i.e., a City Council for the City of Lafayette and a Parish Council for the Parish of Lafayette?
It is possible to place this proposition on the ballot (followed by "For" or "Against") and to also place on the same ballot a proposition which involves the aforementioned "tweaked" Charter? In previous discussions, it was noted that your Home Rule Charter is a "POST-1974" as opposed to a "PRE-1974" Charter. According to the Louisiana Supreme Court, Article VI, section 5(E) states that a local governmental subdivision that acquires home rule powers subsequent to the adoption of the 1974 Constitution is authorized to exercise such powers only when necessary, requisite, or proper for the management of its affairs. SeeCity of New Orleans vs. Board of Commissioners of the Orleans LeveeDistrict, 640 So. 2d 237, 93-0690 (La. 7/5/94).
Under Article VI, "home rule" does not mean complete autonomy, but rather it is a rule by which local government has the freedom and flexibility to manage its own local affairs without undue legislative influence. Kean, Local Government and Home Rule, 21 Loy. L.Rev. 63, 66 (1975). Under Article VI, the state is supreme on state-wide concerns, but it allows a home rule government to exercise any necessary power or function except as may be expressly limited by its charter and thegeneral laws, or as may be inconsistent with other provisions of theConstitution. See Miller vs. Oubre, 96-2022 (La. 10/15/96) 682 So.2d 231,236. (Emphasis Added) *Page 3 
You first ask whether an election to "amend" the current governmental Home Rule Charter should be held of all qualified electors of the entire Parish of Lafayette and/or whether the qualified electors residing in the City of Lafayette should have a separate vote on the matter.
Section 8-14 of the Lafayette City-Parish Consolidated Government Home Rule Charter states:
The Charter shall become effective only if approved by a majority of those voting on the charter residing in Lafayette Parish and approved by a majority of those voting on the charter residing in the City of Lafayette.
The Louisiana Supreme Court has long held that a law is to be repealed or amended with the same formality required for its passage. See, City ofShreveport v. Gregory, 186 La. 407, 172 So. 435 (La. 1937). Therefore, any amendments to the LCG Charter will become effective only if approved by a majority of those voting on the Charter residing in Lafayette Parish AND approved by a majority of those voting on the Charter residing in the City of Lafayette.
With regard to "adopting replacement Charters and plans of government for the City of Lafayette and for the Parish of Lafayette," there are no "replacement Charters" yet in existence. Act 187 of 1990 authorized the creation of a Lafayette City-Parish Charter Commission for the purpose of developing a unified city-parish government for Lafayette Parish and the City of Lafayette. The provisions in Act No. 187, which called for a vote by the citizens of the City of Lafayette and Lafayette Parish, also served to repeal their preexisting home rule charters and adopt a new unified charter under Article VI, Sections 5(C) and (D).
The only way the electors at such a parish-wide election could adopt a Charter and plan of government for the City of Lafayette would be if there was a Charter for the voters to adopt. First, there would need to be a Charter Commission for the City of Lafayette created, then a proposed Charter created by the Commission, and finally, ultimate presentation to the voters at an election, as required by La.R.S. 33:1395,et seq.
Your second question is, whether it is mandatory that any new Charter (for either the City or Parish) contain a particularized listing of the voting precincts of which each new Council (City and Parish) will be comprised? Absent a particularized listing of the voting precincts of which each new Council will be comprised, this would be tantamount to "at-large" districts. There is no statutory impediment to having at-large districts; however, the proposed districts must first receive *Page 4 
preclearance by the US Department of Justice under Section 5 of the Voting Rights Act of 1965 before conducting qualifying and elections.
Your final questions is, whether it is permissible to present to the electorate, by way of distinct propositions, alternative propositions for different, perhaps mutually exclusive, forms of government, such as a proposal for two (2) separate and distinct governing authorities, or Councils, i.e., a City Council for the City of Lafayette and a Parish Council for the Parish of Lafayette? You ask whether it is possible to place this proposition on the ballot (followed by "For" or "Against") and to also place on the same ballot a proposition which involves the aforementioned "tweaked" LCG Charter.
La.R.S. 18:1299 states that no proposition or question shall be submitted to the voters except that which is authorized by state constitution, by a statute of this state, or by a home rule charter. Section 7-03 of the LCG Home Rule Charter is entitled "Amending or Repealing the Charter." Paragraph (D) of this Section states:
Proposals by the Council and by petition may be submitted to the voters at the same election and voters may, at their option, accept or reject any or all such proposals. Should conflicting proposals be approved at the same election, the one receiving the greater number of affirmative votes shall prevail to the extent of such conflict.
Accordingly, the answer to your final question would be in the affirmative since it is specifically authorized by your Home Rule Charter.
We trust this satisfactorily answers your questions. Please feel free to contact our office should you have any additional concerns.
Yours very truly,
JAMES D. "BUDDY" CALDWELL
ATTORNEY GENERAL
BY: __________________________
WILLIAM P. BRYAN, III
Assistant Attorney General
JDC/WPB, III/jv